# Bolman *v.* Overall.

*Bill in Equity to establish Testamentary Paper as Contract, and to enforce Trust on Property against Executor and Legatees under Subsequent Will.*

1. *Contract of married woman; when binding.*—A married woman, owning an equitable estate, may bind it by an irrevocable contract in the form of a will, founded on valuable consideration, which operates in the nature of a covenant to stand seized to the use of the promisee; but such contract can not be enforced against her statutory estate.

2. *Statutory or equitable estate.*—All property belonging to a married woman is regarded as belonging to her statutory estate, until the contrary is proved; and though a deed conveying land to her, "to her sole and separate use," presumptively creates an equitable estate, the presumption is destroyed by proof that the purchase-money belonged to her statutory estate, or was a part of her earnings to which her husband had not relinquished his marital rights.

3. *Wife's earnings.*—Where the rights of creditors do not intervene, the husband may relinquish the wife's earnings to her by way of gift, thereby creating in her an equitable estate; but such relinquishment and gift will not be presumed from the fact that the parties lived separate and apart, when it is shown that their estrangement was caused by the husband's attempts to assert his marital rights in and to her property, the existence and amount of which she carefully concealed from his knowledge.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 6th November, 1886, by Mrs. Louisa Bolman, and her daughters, against G. Y. Overall, as executor of the last will and testament of Mrs. Augusta Lohman, deceased, and the devisees and legatees under her will; and sought to establish, as a contract founded on valuable consideration, a former testamentary paper executed by Mrs. Lohman in favor of the complainants, and to enforce a trust on her property according to its terms. Mrs. Lohman died in October, 1886, and her will was duly

[Bolman v. Overall.]

proved and admitted to probate soon afterwards, in said county of Mobile. The paper under which the complainants asserted the rights which they sought to enforce was also in the form of a will, dated December 1st, 1881, signed by Mrs. Lohman, attested by two witnesses, containing a general residuary clause in favor of Mrs. Bolman, and pecuniary legacies to her daughters; and it also contained a clause in these words: "Said Louisa Bolman is to treat me during the remainder of my life, if she survive me, as she has done heretofore, with kindness and respect; and this legacy is made to her and her children in consideration of past and future treatment." The property belonging to Mrs. Lohman's estate, as described in the bill, consisted of a house and lot in the city of Mobile, certain bonds called "Harbor Improvement Bonds," money, &c. The house and lot was conveyed to her by B. W. Foster and wife, by deed dated June 30, 1875, on a recited consideration of $475 in hand paid, to her sole and proper use, benefit and behoof. At the time this deed was executed, Mrs. Lohman was a married woman, the wife of one Peter Kraft; but they were living apart, and she had resumed the name acquired by her first marriage. The bill alleged that said testamentary paper was delivered by Mrs. Lohman to Mrs. Bolman, and was executed in pursuance of a promise and agreement, made in 1876, when she was in bad health, in these words: "I am helpless, and my relatives pay no attention to me. I want you to come and nurse me, and take care of me; and if you do, you shall be fully paid when I die ; all that I have at my death shall be yours;" and that the services were performed as stipulated, Mrs. Lohman being carried to Mrs. Bolman's house, where she and her daughters nursed and waited on her until a few months before her death, when she voluntarily left the house. The amended bill, filed after the reversal and remandment of the case on the former appeal (80 Ala. 451), alleged that this promise and agreement "was ratified and confirmed by said Peter Kraft, in 1883, by writings signed by him;" and that all of Mrs. Lohman's money and property "was her earnings, or derived from her earnings, during coverture, retained by her by permission of her husband." The defendants answered the bill, original and amended, denying the validity or binding obligation of the testamentary paper, and asserting that all the property held and owned by Mrs. Lohman, was a statutory, and not an equitable estate, and could not be charged by her contracts.

On the hearing, the complainants offered in evidence, 1st, the deed executed to Mrs. Lohman by Foster and wife, above mentioned; 2d, a deed executed to her by W. B. Brown and wife; 3d, the deposition of Mrs. Bolman, with exhibits; 4th, her answer to the bill filed against her by Mrs. Lohman for the foreclosure of a mortgage for $2,000; 5th, the opinion and decree of this court in that case, reported in 79 Ala. 63; and several other deeds and depositions. The deed of Brown and wife to Mrs. Lohman was executed in September, 1862, when she was a widow, and conveyed a certain lot to her "to her sole and proper use, benefit and behoof;" but the lot thereby conveyed was not mentioned in the bill, and it seems, as the chancellor found, to have been sold by her. Appended to Mrs. Bolman's deposition, as exhibits, were four receipts signed by Peter Kraft, of different dates in 1883-4, but each in these words: "Received this day of Louisa Bolman $60, being the semi-annual interest due this day, payable by the said Louisa Bolman, upon the $2,000 set out in the agreement and mortgage in the suit of my wife, calling herself Augusta Lohman, against Louisa Bolman et al., in the Chancery Court at Mobile; and I do hereby confirm and ratify the agreement between said parties." These are the receipts mentioned in the opinion of the court.

On final hearing on pleadings and proof, the chancellor dismissed the bill, holding that the evidence failed to show that Mrs. Lohman owned any equitable estate; and his decree is here assigned as error.

F. G. BROMBERG, for appellants, cited *Wing v. Roswald*, 74 Ala. 346; *Helmetag v. Frank*, 61 Ala. 67; *McMillan v. Peacock*, 57 Ala. 127; *Whitehurst v. Boyd*, 8 Ala. 375; *Makepeace v. Harvard College*, 10 Pick. 302.

OVERALL & BESTOR, *contra*, cited *Patterson v. Kicker*, 72 Ala. 406; *Steed v. Knowles*, 79 Ala. 447; *Short v. Battle*, 52 Ala. 456; *Bolman v. Overall*, 80 Ala. 451; *Lee v. Lee*, 77 Ala. 412; *Miller v. Voss*, 62 Ala. 122; *Bell v. Bell*, 36 Ala. 466; *Bynum v. Frederick*, 81 Ala. 488; *Parker v. Marks*, 82 Ala. 548.

SOMERVILLE, J.—In *Bolman v. Overall*, 80 Ala. 451, we decided, that the paper executed by Mrs. Lohman on December 1st, 1881, in the form of a will, and delivered by

her to Mrs. Bolman, might constitute an irrevocable contract, binding on the separate estate of the maker, or testatrix, provided such estate should be proved to be *equitable*, and not statutory. The bill being one in the nature of specific performance, to enforce a trust created by contract, and Mrs. Lohman, the testatrix, being a married woman, she could not bind her *statutory* separate estate, so as to charge it by such a contract.

The only question now before us is as to the nature of Mrs. Lohman's separate estate, whether equitable or statutory. The chancellor decided that it was statutory, and that, for this reason, it could not be charged by the wife's contract. In this conclusion we fully agree.

We are inclined to the view, from the testimony, that Mrs. Lohman came into possession of the great part of her property by inheritance from her first husband, Jacob Lohman, whom she married in 1844, and resided with until the date of his death, in 1855, or 1856. She remained a widow until 1862, or 1863, when she married one Stikes, who did not survive longer than a month or two before he died. She afterwards married one Kraft, in 1865, and he also died in the year 1886. She lived apart from Kraft most of the time, and never assumed his name, always being called by the name of Lohman, that of her first husband.

The established rule is to regard presumptively all property owned by a married woman, in this State, as her statutory separate estate, until the contrary is proved. If it is asserted to be equitable, the *onus* of proving this fact is cast on the one who asserts it.—*Steed v. Knowles*, 79 Ala. 446; *Patterson v. Kicker*, 72 Ala. 406.

There are two reasons given why it is contended this presumption should be rebutted in the present case: (1.) Two deeds are introduced in evidence; the first from one Foster to Mrs. Lohman, executed in June, 1875; and the other from one Brown to her, dated in September, 1862, each conveying a piece of real estate to her *sole and separate use*, in such a manner as to create in her an equitable separate estate as to this particular property, *on the face of the papers*. (2.) The testimony shows that Kraft and Mrs. Lohman, although not divorced, lived apart; and it is insisted that he released, by way of gift to her, her earnings accumulated by carrying on a small mercantile business, and in such manner as to create in her an equitable separate estate.

[Bolman v. Overall.]

The money or funds, however, used by Mrs. Lohman in purchasing this property, we are satisfied from the evidence, was her statutory separate estate; and she had no right to change in any such manner the character of her estate, so as to make it equitable. The implication as to the nature of the estate, imputed presumptively by the form of these deeds, was therefore rebutted by the proof in the case.— *Loeb v. McCullough*, 78 Ala. 533; *Parker v. Marks*, 82 Ala. 548.

The law does permit the husband, it is true, to release the wife's earnings to her by way of gift in such manner as to create in her an equitable separate estate, good as between the parties, where the rights of creditors do not intervene. But it is held that the evidence of such gift must have been clear, and it must be made apparent that the husband intended to divest himself of all right to such earnings, and to set them apart to the wife. "The essence of the whole transaction," as observed in *Carter v. Worthington*, 82 Ala. 334, "is the assent of the husband, clearly and satisfactorily manifested; and this may be shown by evidence that the husband *permitted* the wife to carry on a trade or business in her sole name, and on her sole account, without any participation or interference on his part." The testimony fails entirely to show that Kraft ever voluntarily relinquished his marital rights in any of his wife's property, or permitted her to carry on trade under such circumstances as to indicate his intention to release to her anything she earned by way of gift. She seems to have forced him to leave her household, because of the fact that he persisted in attempting to assert his marital rights in her property. The very existence and amount of this property she sedulously concealed from his knowledge, as far as she was able. The only occasion he ever had to assert his rights, he did so, by collecting the interest on certain money loaned to Mrs. Bolman, the existence of which came to his knowledge by the accident of litigation in which the money was involved. *Bolman v. Lohman*, 74 Ala. 507; *Bolman v. Lohman*, 79 Ala. 63; *Kraft v. Lohman*, 79 Ala. 323.

We fully concur with the chancellor in the view, that the receipts given by Kraft to Mrs. Bolman, for the interest on the loaned money, were not intended to operate as a relinquishment of his marital rights in any of his wife's property, other than the two thousand dollars loaned to Mrs. Bolman, which was secured by mortgage. In collecting the

[Scruggs v. Decatur Mineral & Land Company.]

interest on the debt, which was itself the highest assertion of his marital rights as trustee of his wife's *statutory* separate estate, he only ratifies the agreement which had been made between Mrs. Lohman and Mrs. Bolman, as contained in the body of the mortgage; by which it was stipulated that Mrs. Bolman and her two children were to become entitled to the mortgage debt, in the event she survived Mrs. Lohman, who was the mortgagee. The receipts make this plain by reference to "the agreement and mortgage," which had been set out in Mrs. Lohman's bill seeking to foreclose the mortgage, then pending in the Mobile Chancery Court. *Bolman v. Lohman,* 79 Ala. 63, 67.

The decree of the chancellor, in our opinion, is supported by the testimony, and is affirmed.